NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3393-15T4,
A-3396-15T4, A-3397-15T4,
A-3398-15T4, A-3399-15T4,
A-3727-15T4, A-3770-15T4,
A-3771-15T4, A-3781-15T4,
A-3782-15T4, A-3783-15T4,
A-3786-15T4, A-3787-15T4,
A-3789-15T4, A-3790-15T4,
A-3791-15T4, A-3792-15T4,
A-3958-15T4, A-3960-15T4,
A-3965-15T4, A-3966-15T4,
A-3967-15T4, A-3969-15T4,
A-3970-15T4

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

NORTH BEACH 1003, LLC, a
New Jersey limited liability
company,

     Defendant-Appellant,

and

STATE OF NEW JERSEY, DEPARTMENT
OF THE TREASURY, DIVISION OF
TAXATION,

     Defendant.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **June 22, 2017** |
| **APPELLATE DIVISION** |

v.

SHANIN SPECTER and TRACEY
SPECTER,

     Defendants-Appellants,

and

GE CAPITAL MORTGAGE SERVICES,
INC., a New Jersey corporation
or its successor,

     Defendant-Respondent.

—————————————————————————

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

THOMAS R. KLINE,

     Defendant-Appellant.

—————————————————————————

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

ROBERT S. HEKEMIAN,

     Defendant-Appellant,

and

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
a Delaware foreign profit
corporation, or its successor,
as nominee for TD BANK, N.A.,

Defendant-Respondent.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

RICHARD CAROLAN and
TINA CAROLAN,

    Defendants-Appellants.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

JEANETTE F. FRANKENBERG and
LOUIS CAMPISANO,

    Defendants-Appellants,

and

THE PROVIDENT BANK, a New Jersey
domestic limited liability
company, or its successor,

    Defendant-Respondent.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

BEVERLY T. CAMMARANO QUALIFIED

PERSONAL RESIDENCE TRUST,
BEVERLY T. CAMMARANO and ROBERT
J. CAMMARANO as co-trustees,

     Defendants-Appellants,

and

BANK of AMERICA, N.A.,

     Defendant.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

BARBARA J. WELDON,

     Defendant-Appellant.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

COLLEEN M. ROWE and
KELLY A. ROWE,

     Defendants-Appellants.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

KEVIN KLINGERT and KRISLYN

KLINGERT,

    Defendants-Appellants.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

PATRICIA ROBERTS TRUST,
PATRICIA ROBERTS as trustee,
and SCOTT GUSMER,

    Defendants-Appellants.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

DAVID CASTELBLANCO and LAURA
ENGELHARDT,

    Defendants-Appellants,

and

FIRST REPUBLIC BANK,

    Defendant-Respondent.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

RICHARD MALOUF and MARILYN

A-3393-15T4

MALOUF,

     Defendants-Appellants.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

FREDERICK SMITH, SANDRA S.
HOLDER-BROWN as trustee for
SANDRA S. HOLDER-BROWN
TRUST, and DEBORAH A. SMITH,

     Defendants-Appellants,

and

SANTANDER BANK, N.A.,

     Defendant-Respondent.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

MICHAEL VAN KRALINGEN and
SANDRA MILLER as trustees of
the VAN KRALINGEN RESIDENCE
TRUST II,

     Defendants-Appellants,

and

0.238-Acres of Land in The
Borough of Point Pleasant
Beach, Ocean County, New
Jersey and INVESTORS SAVINGS

A-3393-15T4

BANK,

     Defendants-Respondents.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

DENNIS LA PLANTE and CATHERINE
LA PLANTE,

     Defendants-Appellants,

and

0.232-Acres of Land in The
Borough of Point Pleasant Beach,
M&T BANK CORPORATION, as
successor to HUDSON CITY SAVINGS
BANK, and U.S. SMALL BUSINESS
ADMINISTRATION,

     Defendants-Respondents.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

COURTNEY M. ALESSO and JOHN A.
ALEXY, co-trustees of the
COURTNEY M. ALESSO 2012 TRUST,

     Defendants-Appellants,

and

0.259-Acres of Land In The
Borough of Point Pleasant Beach,

Ocean County, New Jersey,

     Defendant-Respondent.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

MINALKUMAR A. PATEL LIVING TRUST,
MINALKUMAR A. PATEL and ASRA
WARSI as trustees, and ASRA WARSI
LIVING TRUST, MINALKUMAR A. PATEL
and ASRA WARSI as trustees,

     Defendants-Appellants.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

NEIL KAHANOVITZ and SUZANNE
KAHANOVITZ,

     Defendants-Appellants,

and

MANASQUAN SAVINGS BANK,

     Defendant-Respondent.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

8

JILL P. GILES REVOCABLE TRUST,
JILL P. GILES, as trustee,

     Defendants-Appellants,

and

MANASQUAN SAVINGS BANK,

     Defendant-Respondent.

_____

NINA RITTER, SHARON CRUZ,
LAWRENCE E. BATHGATE, II, AUSTIN
FRAGOMEN and GWENDOLYN FRAGOMEN,
SMATCO, LP, ANN F. MESTRES,
LOWELL MILLAR and JENNIFER
MILLAR,

     Plaintiffs-Appellants,

v.

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

     Defendant-Respondent.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

     Plaintiff-Respondent,

v.

RAYMOND BRAUN and JAYNE K.
BRAUN,

     Defendants-Appellants,

and

NEW YORK COMMUNITY BANCORP,

Defendant-Respondent.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

THOMAS BUCKLEY and KAREN
BUCKLEY,

    Defendants-Appellants,

and

TD BANK NORTH, INC., d/b/a TD
BANK, N.A.,

    Defendant-Respondent.

_____

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

    Plaintiff-Respondent,

v.

GERARD LOSURDO and NINA
LOSURDO,

    Defendants-Appellants,

and

U.S. BANK, N.A.,

    Defendant-Respondent.

_____

       Argued May 2, 2017 — Decided June 22, 2017

       Before Judges Yannotti, Fasciale, and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket Nos. L-3067-15, L-3071-15, L-3077-15, L-3066-15, L-3069-15, L-2919-15, L-3289-15, L-3286-15, L-3420-15, L-3410-15, L-3319-15, L-3287-15, L-3285-15, L-3438-15, L-0442-16, L-0444-16; L-0443-16, L-3206-15, L-3205-15, L-3288-15, L-2949-15, L-3204-15, L-3292-15, and L-3275-15.

Scott A. Heiart argued the cause for appellants North Beach 1003, L.L.C., Shanin Specter and Tracey Specter, Thomas R. Kline, Robert S. Hekemian, and Richard Carolan and Tina Carolan (Carlin & Ward, P.C., attorneys; Mr. Heiart, on the briefs).

Mark S. Winter argued the cause for appellants Jeanette F. Frankenberg and Louis Campisano (Stern Lavinthal Frankenberg & Norgaard, L.L.C., attorneys; Mr. Winter, on the briefs).

John H. Buonocore, Jr. and Anthony F. DellaPelle argued the cause for appellants Beverly T. Cammarano Qualified Personal Residence Trust, Beverly T. Cammarano and Robert J. Cammarano as co-trustees, Barbara J. Weldon, Colleen M. Rowe and Kelly A. Rowe, Kevin Klingert and Krislyn Klingert, Patricia Roberts Trust, Patricia Roberts as trustee, and Scott Gusmer, David Castelblanco and Laura Engelhardt, Richard Malouf and Marilyn Malouf, Frederick Smith, Sandra S. Holder-Brown as trustee for Sandra S. Holder-Brown Trust and Deborah A. Smith, Michael Van Kralingen and Sandra Miller as trustees of the Van Kralingen Residence Trust II, Dennis La Plante and Catherine La Plante, Courtney M. Alesso and John A. Alexy, co-trustees of the Courtney M. Alesso 2012 Trust, Minalkumar A. Patel Living Trust, Minalkumar A. Patel and Asra Warsi as trustees, Asra Warsi Living Trust, Minalkumar A. Patel and Asra Warsi as

11

A-3393-15T4

trustees, Neil Kahanovitz and Suzanne Kahanovitz, Jill P. Giles Revocable Trust, Jill P. Giles as trustee, Nina Ritter, Sharon Cruz, Lawrence E. Bathgate, II, Austin Fragomen and Gwendolyn Fragomen, SMATCO, L.P., Ann F. Mestres, Lowell Millar and Jennifer Millar, Raymond Braun and Jayne K. Braun, Thomas Buckley and Karen Buckley, and Gerard Losurdo and Nina Losurdo (McKirdy & Riskin, P.A., attorneys; Mr. Buonocore and Mr. DellaPelle, on the briefs).

David C. Apy, Assistant Attorney General, and Ronald L. Perl, argued the cause for respondent Department of Environmental Protection (Christopher S. Porrino, Attorney General, and Hill Wallack, L.L.P., attorneys; Melissa H. Raksa, Assistant Attorney General, of counsel; David S. Frankel, Kristina L. Miles, Bruce A. Velzy, Deputy Attorneys General, and Dale Laster Lessne, on the brief).

The opinion of the court was delivered by

GILSON, J.A.D.

These consolidated appeals present the questions whether the New Jersey Department of Environmental Protection (DEP) has the authority to condemn private property to take perpetual easements for shore protection purposes and whether the easements can allow public access to, and use of, the areas covered by the easements. We hold that the DEP has such authority and the easements that allow for publicly funded beach protection projects can include public access and use. Thus, we affirm the trial court's final judgments finding that the DEP properly exercised its power of eminent domain and appointing

commissioners to determine the value of the takings. We also affirm the trial court's orders denying defendants' motion to dismiss the DEP's complaints and granting summary judgment to the DEP on the declaratory judgment action brought by certain appellants.

I.

Under the New Jersey public trust doctrine, the State holds ownership over all shore-lined lands that are flowed by the tide up to the mean high water mark. City of Long Branch v. Jui Yung Liu, 203 N.J. 464, 475 (2010) (citing O'Neill v. State Highway Dep't, 50 N.J. 307, 323 (1967)). Accordingly, New Jersey has historically managed, protected, and developed its shoreline.

Over the past several decades, the federal government has assisted New Jersey in protecting coastal communities from the impacts of storms and beach erosion. In 1986, Congress enacted the Water Resources Development Act (WRDA), 33 U.S.C.A. § 2211 to § 2227. Under the WRDA, the federal government will pay between fifty to sixty-five percent of the costs of such projects and the State will be responsible for the remaining balance. 33 U.S.C.A. § 2213.

In the aftermath of Superstorm Sandy, Congress passed the Disaster Relief Appropriations Act of 2013 (Sandy Act), Pub. L. No. 113-2, 127 Stat. 4. The Sandy Act authorizes the Army Corps

of Engineers (Army Corps) to construct beach replenishment and dune construction projects to protect the New Jersey shoreline. The Sandy Act also provides that the federal government will fund one hundred percent of the costs for the completion of some of the projects. The State's contribution for those projects can be deferred and financed over a period of thirty years.

In September 2013, Governor Chris Christie issued Executive Order No. 140. That order established the Office of Flood Hazard Risk Reduction Measures within the DEP and gave it responsibility "for the rapid acquisition of property vital to [Sandy] reconstruction efforts[.]"

To facilitate the projects authorized by the Sandy Act, the Army Corps partnered with the DEP. The DEP was responsible for gaining physical access to the property along the New Jersey shoreline needed to construct and maintain the projects. Two projects are at issue on these appeals. The Long Beach Island Project (the LBI Project) and the Manasquan Inlet to Barnegat Inlet Storm Damage Reduction Project (the Manasquan Project).[1] Those Projects consist of a dune and berm system extending the

---

[1] According to the partnership agreements between the Army Corps and the DEP, the federal government will fund one hundred percent of the Manasquan Project initially and the State shall defer payment of the contribution in accordance with the Sandy Act. For the LBI Project, the State is required to pay thirty-five percent of the cost at the start of the Project.

entire eighteen-mile length of Long Beach Island and fourteen miles along northern Ocean County from Berkeley Township to Point Pleasant Beach.

Under its agreements with the Army Corps, the DEP must obtain all necessary property interests before the Army Corps will begin to construct the Projects. In that regard, the project partnership agreements between the DEP and the Army Corps provide that the DEP is to acquire all "real property interests . . . required for construction, operation, and maintenance of the Project[s]," including the "lands, easements and right-of-way required for the Project[s]."

After Superstorm Sandy, the State, working with various municipalities, undertook efforts to secure voluntary conveyances of the property interests needed for the Projects. While many property owners voluntarily granted easements, other property owners declined to give voluntary easements. Thus, the DEP initiated actions to acquire the remaining easements through eminent domain proceedings.

Certain appellants in these consolidated appeals own twenty-three properties on Long Beach Island or in northern Ocean County. They refused to provide voluntary easements to the DEP. The DEP filed condemnation complaints against the owners of those twenty-three properties. Those property owners

are referred to as the North Beach 1003 defendants, the Frankenberg defendants, and the Cammarano defendants. The owners of seven other properties brought a declaratory judgment action against the DEP. They are referred to as the Ritter appellants.

Before filing eminent domain actions, the DEP had an appraiser, Richard Hall, appraise the properties owned by the North Beach 1003, Frankenberg, and Cammarano defendants. Hall first wrote to each property owner, informing them that he would be conducting an appraisal and inviting them to provide him with relevant information and to attend his inspection. Only a few defendants responded to Hall and attended his inspection. As a consequence, Hall was not given access to the homes of most defendants, including the home owned by the Frankenberg defendants.

Once the appraisals were completed, the DEP sent those appraisals to defendants and offered to purchase easements for between several hundred dollars and several thousand dollars. Attorneys for defendants then informed the DEP that they would like to negotiate those offers. The DEP responded that defendants would need to obtain their own informal appraisals to commence meaningful negotiations. Defendants requested time to obtain such appraisals. Defendants also requested the DEP

answer certain questions concerning Hall's appraisals and his methodology. In addition, the Frankenberg defendants requested a reappraisal since Hall had not inspected the interior of their home. The Frankenberg defendants also provided the DEP with photographs of the views from the interior of their home and allowed representatives of the DEP and the Army Corps to inspect their home.

Eventually, the DEP set a deadline for receiving defendants' appraisals. When the deadline passed without receipt of appraisals from defendants, the DEP commenced condemnation actions in late 2015 and early 2016.

In the condemnation complaints against the North Beach 1003, Frankenberg, and Cammarano defendants, the DEP sought perpetual easements under N.J.S.A. 12:3-64. The proposed easements would allow for the "construction, periodic nourishment, and continued maintenance of the Project[s'] dunes and berms system." The easements also provided the right for the public to access and use the areas covered by the easements.

Defendants responded with answers and motions to dismiss the complaints, contending that the DEP lacked statutory authority to take easements. Defendants also contended that the DEP did not have the authority to take perpetual easements, which provided for a public beach. Additionally, defendants

asserted that the DEP had failed to engage in bona fide negotiations as required by the Eminent Domain Act (EDA), N.J.S.A. 20:3-1 to -50.

On March 4, 2016, the trial court heard oral argument in the matters involving the North Beach 1003, Frankenberg, and Cammarano defendants. Thereafter, on March 28, 2016, the trial court issued a written opinion explaining that it would grant the DEP's orders to show cause and deny defendants' motions to dismiss. The court held that the DEP was statutorily authorized to take private property for "public beach purposes and for shore protection purposes." Specifically, the trial court held that both N.J.S.A. 12:3-64 and the EDA permitted the DEP to take a property interest less than a fee simple, such as perpetual easements. The court also held that, because federal funding was conditioned on public access and use, the DEP had the discretion to include public access and use as part of the easements. Finally, the court found that the DEP had complied with all pre-litigation steps required by the EDA, including engaging in bona fide negotiations with the property owners. See N.J.S.A. 20:3-6.

Having held that the DEP properly exercised its power of eminent domain, on April 5, 2016, the trial court entered orders

for final judgments in favor of the DEP and appointed commissioners to determine the value of the takings.[2]

Separately, in 2015, the Ritter appellants filed a declaratory judgment action seeking a ruling that the DEP could not rely on N.J.S.A. 12:3-64 to acquire easements on their properties. The Ritter appellants moved for summary judgment and the DEP cross-moved for summary judgment, arguing that the Ritter appellants' action was premature since the DEP had not yet commenced condemnation proceedings against their properties. The trial court granted summary judgment to the DEP in an order entered on April 8, 2016. The court relied on its March 28, 2016 opinion, holding that the DEP had authority to condemn private property. The court also found that the Ritter appellants were seeking an advisory opinion because the DEP had not yet filed condemnation actions against those property owners.

The North Beach 1003, Frankenberg, and Cammarano defendants now appeal the orders of final judgments entered in their

---

[2] The trial court also ruled that it would conduct a plenary hearing to determine whether the Project was necessary in front of certain properties that were already protected by a "rock revetment," as alleged by certain owners of properties located in Bay Head and Mantoloking. At oral argument, counsel informed us that the properties protected by the rock revetment are not part of these consolidated appeals because the trial court has not yet issued a decision concerning those properties.

actions. The Ritter appellants appeal the April 8, 2016 order granting summary judgment to the DEP and dismissing their declaratory judgment action. All the appeals were consolidated because they present similar issues. One property owner who was initially part of these consolidated appeals has resolved the dispute with the DEP while these appeals were pending. We denied appellants' request for stays of the Projects pending these appeals, but we accelerated the consolidated appeals.

## II.

In challenging the orders and judgments entered by the trial court, appellants present eight arguments, six of which relate to all appellants, and two of which are specific to the North Beach 1003 and Frankenberg defendants. Specifically, appellants argue that the trial court erred by (1) holding that the DEP had statutory authority to acquire easements; (2) interpreting N.J.S.A. 12:3-64 to allow for the taking of easements; (3) interpreting N.J.S.A. 12:3-64 to allow for the protection of public beaches; (4) interpreting our decision in State v. Archer, 107 N.J. Super. 77 (App. Div. 1969); (5) determining that the EDA authorized the DEP to take easements; (6) allowing the DEP to take perpetual easements; (7) finding that the DEP conducted bona fide negotiations with the North

Beach 1003 defendants; and (8) finding that the DEP acted in good faith in dealing with the Frankenberg defendants.

We first address the DEP's statutory authority to condemn property and thereby address appellants' first, second, fourth, and fifth arguments. Next, we examine whether the DEP can take a perpetual easement that allows for public access, which will address appellants' third and sixth arguments. Finally, we will address the last two arguments raised by the North Beach 1003 and Frankenberg defendants concerning the bona fide negotiations by the DEP and the agency's compliance with the pre-litigation procedures in the EDA.

Initially, we identify our standard of review. We use a plenary standard to review questions of law. <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 <u>N.J.</u> 366, 378 (1995). Thus, we review de novo the question whether the DEP has statutory authority to condemn private property and take perpetual easements allowing for public access and use. We defer to the trial court's factual findings regarding the negotiations conducted by the DEP. <u>Tractenberg v. Township of West Orange</u>, 416 <u>N.J. Super.</u> 354, 365 (App. Div. 2010) (quoting <u>Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am.</u>, 65 <u>N.J.</u> 474, 484 (1974)). Accordingly, we will reverse such factual findings only if "they are so manifestly unsupported by or inconsistent

with the competent, relevant and reasonably credible evidence." <u>Rova Farms</u>, <u>supra</u>, 65 <u>N.J.</u> at 484. To the extent that established facts are applied to legal questions, however, we owe no special deference to the trial court. <u>Manalapan</u>, <u>supra</u>, 140 <u>N.J.</u> at 378.

A.   The DEP's Authority to Condemn Private Property and Take an Easement.

The power of eminent domain, under which the State may take private property for a public purpose, "is an inherent and a necessary right of the sovereignty of the state." <u>Valentine v. Lamont</u>, 13 <u>N.J.</u> 569, 575 (1953), <u>cert. denied</u>, 347 <u>U.S.</u> 966, 74 <u>S. Ct.</u> 776, 98 <u>L. Ed.</u> 1108 (1954). That power rests with the Legislature. <u>State by Comm'r of Transp. v. Township of South Hackensack</u>, 111 <u>N.J. Super.</u> 534, 543 (App. Div. 1970), <u>certif. denied</u>, 57 <u>N.J.</u> 433 (1971). Our State Constitution provides that when the State takes private property for a public purpose, it must pay "just compensation." <u>N.J. Const.</u> art. I, ¶ 20.

Our Constitution also allows the Legislature to delegate the power of eminent domain to state agencies or political sub-divisions:

> Any agency or political subdivision of the State . . ., which may be empowered to take or otherwise acquire private property for any public . . . use, may be authorized by law to take or otherwise acquire a fee simple absolute or any lesser interest, and may be authorized by law to take or

otherwise acquire a fee simple absolute in, easement upon, or the benefit of restrictions upon, abutting property to preserve and protect the public . . . use; but such taking shall be with just compensation.

[N.J. Const. art. IV, § 6, ¶ 3.]

1.   Statutory Authority

The Legislature has expressly delegated to the DEP the power of eminent domain and the power to protect the New Jersey coastline through N.J.S.A. 12:3-64 and N.J.S.A. 12:6A-1.   The power to condemn "any lands in the State" is set forth in N.J.S.A. 12:3-64.   The power to protect the shore is set forth in N.J.S.A. 12:6A-1.

N.J.S.A. 12:3-64 provides:

> The [DEP] may acquire title, in fee simple, in the name of the State, by gift, devise or purchase or by condemnation in the manner provided in chapter one of the Title Eminent Domain (20:1-1 et seq.) to any lands in the State, including riparian lands, of such area and extent which, in the discretion of the department, may be deemed necessary and advisable.
>
> . . . .
>
> Lands thus acquired shall be used for the improvement or development of any waterway, stream, river or creek or any waterfront or oceanfront property or to give access to any lands of the State.[3]

---

[3] When N.J.S.A. 12:3-64 was first enacted in 1918, the statute authorized the Board of Commerce and Navigation to condemn

(continued)

N.J.S.A. 12:6A-1, entitled "Beach Protection; powers," states:

> In addition to the powers conferred by the provisions of the act to which this act is a supplement, the [DEP] is hereby authorized and empowered to repair, reconstruct, or construct bulkheads, seawalls, breakwaters, groins, jetties, beachfills, dunes and any or all appurtenant structures and work, on any and every shore front along the Atlantic ocean . . . to prevent or repair damage caused by erosion and storm, or to prevent erosion of the shores and to stabilize the inlets or estuaries and to undertake any and all actions and work essential to the execution of this authorization and the powers granted hereby.

The initial question is whether N.J.S.A. 12:3-64 limits the DEP to acquiring only a fee simple, thereby restricting the DEP from acquiring a lesser interest, such as an easement. We hold that the Legislature intended the power to acquire a fee simple to include the power to acquire lesser interests, including an easement.

We start with the plain language of the statute. See Merin v. Maglaki, 126 N.J. 430, 434 (1992) (explaining that "[c]onstruction of any statute necessarily begins with consideration of its plain language"). Read in full context,

_____

(continued)
lands. L. 1918, c. 215. The statute was amended in 1939, and the authority was given to the Department of Conservation and Economic Development (DCED). L. 1939, c. 193. The powers of the DCED were later transferred to the DEP. N.J.S.A. 13:1D-1.

the words "fee simple" do not limit the DEP's authority. To the contrary, because fee simple is the greatest interest that can be acquired in land, those words do not suggest that the DEP could not elect to take a lesser interest. For example, the statute states that the DEP may condemn "any lands in the State, including riparian lands, of such area and extent which, in the discretion of the department, may be deemed necessary and advisable." N.J.S.A. 12:3-64. The word "extent" supports the interpretation that the DEP has the discretion to acquire a lesser interest than a full fee simple.

Appellants focus on the words "fee simple" and argue that the Legislature must have intended to limit the DEP's authority to acquire only a fee simple. That argument, however, finds no support in the language of the statute. N.J.S.A. 12:3-64 is written broadly to authorize the DEP to condemn "any lands in the State, including riparian lands, of such area and extent which, in the discretion of the department, may be deemed necessary and advisable." The phrase "in fee simple" does not suggest that the Legislature intended to limit the DEP's authority to take a lesser interest.

Appellants also argue that N.J.S.A. 12:3-64 does not allow the DEP to take interests in property for purposes of protecting the shore from storm damage. In that regard, appellants point

to the words "improvement or development" and argue that those words do not include protecting the shoreline. Read in full context, however, "improvement or development" includes protecting the very lands being acquired for improvement or development.

Appellants further contend that "improvement or development" refers only to the authority, granted by N.J.S.A. 12:3-64 to -71, to acquire lands in fee simple so that they may be leased or granted to the owner as compensation for the taking. Such lands are then "improved and developed at the expense of the grantee or lessee." N.J.S.A. 12:3-66. The lessee or grantee must then "maintain and operate, during the life of the lease or grant upon said premises, such enterprise, commercial operation, business or venture as the improvements are designed for[.]" N.J.S.A. 12:3-67. N.J.S.A. 12:3-65 states, however, that lands acquired under N.J.S.A. 12:3-64 "may be leased or granted[.]" Thus, the statute does not limit DEP's authority to acquire lands or interests in properties for use by the State, such as shore protection.

2.   The Eminent Domain Act

The DEP's power to acquire a lesser interest than a fee simple under N.J.S.A. 12:3-64 is confirmed by the EDA. The EDA was enacted in 1971 for the purpose of integrating and

standardizing the more than three-hundred statutes authorizing the exercise of eminent domain. <u>Township of West Windsor v. Nierenberg</u>, 150 <u>N.J.</u> 111, 126 (1997). The EDA is not an enabling statute; rather, it provides uniform practices and procedures to be followed by all public entities that have the power to condemn. <u>County of Monmouth v. Wissell</u>, 68 <u>N.J.</u> 35, 39-40 (1975); <u>Township of Hillsborough v. Robertson</u>, 260 <u>N.J. Super.</u> 37, 42 (Law Div. 1992).

The EDA does not independently authorize the DEP to acquire property by condemnation. The EDA does, however, confirm our interpretation that <u>N.J.S.A.</u> 12:3-64 allows the DEP to acquire any interest in property it condemns. Section twenty of the EDA states:

> The title to property condemned and acquired by the condemnor hereunder, shall be a title in fee simple, free and discharged of all right, title, interest and liens of all condemnees, and shall include all the right, title and interest of each condemnee therein, provided, however, that if the complaint or any amendment thereof shall specify a lesser title, the lesser title so specified shall be the title condemned and acquired.

> [<u>N.J.S.A.</u> 20:3-20.]

Our Supreme Court has held that the language of <u>N.J.S.A.</u> 20:3-20 "anticipates a situation in which a leasehold or an easement is the only condemned property interest." <u>Town of</u>

Kearny v. Disc. City of Old Bridge, Inc., 205 N.J. 386, 405 (2011); see also Borough of Merchantville v. Malik & Son, LLC, 218 N.J. 556, 570 (2014) ("To be sure, a condemning authority may condemn less than a fee simple interest. The very language of N.J.S.A. 20:3-6 requiring the condemnor to identify the property and the interest to be taken recognizes this principle."). Moreover, the EDA defines "[p]roperty" to mean "land, or any interest in land." N.J.S.A. 20:3-2(d).

When the Legislature enacted the EDA in 1971, it was aware that the DEP had the authority to condemn property. Indeed, N.J.S.A. 12:3-64 expressly provides that the DEP is to condemn property "in the manner provided in chapter one of the Title Eminent Domain (20:1-1 et seq.)," which was the statute replaced by the EDA. Thus, when the Legislature authorized a condemnor, such as the DEP, to take a title in fee simple or "a lesser title," that confirmed the authority of the DEP. Indeed, if the Legislature had intended to limit the DEP's authority to acquire an interest less than a fee simple, it could have amended N.J.S.A. 12:3-64. The Legislature, however, chose not to amend that statute and left the DEP with the authority granted under N.J.S.A. 20:3-20 to take "a lesser title" than fee simple.

3. Implicit Authority

The power to acquire a lesser interest than a fee simple is also implicit in N.J.S.A. 12:3-64. The sources of that implicit legislative intent include (1) understanding the DEP's broad authorities and reading N.J.S.A. 12:3-64 in conjunction with N.J.S.A. 12:6A-1 and -2; (2) considering the history of beach protection efforts in New Jersey; and (3) considering our decision in Archer, supra, 107 N.J. Super. 77.

An administrative agency has the powers that have been "expressly granted" by the Legislature, as well as such "'incidental powers [as] are reasonably necessary or appropriate to effectuate' those expressly granted powers." Borough of Avalon v. N.J. Dep't of Envtl. Prot., 403 N.J. Super. 590, 607 (App. Div. 2008) (alteration in original) (quoting N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562 (1978)), certif. denied, 199 N.J. 133 (2009). Further, "the powers of an administrative agency should be liberally construed to permit the agency to achieve the task assigned to it[.]" In re Heller, 73 N.J. 292, 303 (1977) (quoting In re Comm'r of Banking & Ins. v. Parkwood Co., 98 N.J. Super. 263, 271-72 (App. Div. 1967)).

Thus, "courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent." N.J. Guild, supra, 75 N.J. at 562. The primary task of the

court is to "effectuate the legislative intent in light of the language used and the objects sought to be achieved." Merin, supra, 126 N.J. at 435 (quoting State v. Maguire, 84 N.J. 508, 514 (1980)). Therefore, in determining whether a given action of the DEP has statutory authorization, a reviewing court "may look beyond the specific terms of the enabling act" and "examin[e] the entire statute in light of its surroundings and objectives." N.J. Guild, supra, 75 N.J. at 562.

The DEP is a combination of agencies and divisions that historically operated independently of each other. See, e.g., N.J.S.A. 13:1D-1 to -3 ("reorganiz[ing], continu[ing] and designat[ing]" the Department of Conservation and Economic Development (DCED) as the DEP). Accordingly, the DEP has a wide array of responsibilities and related authorities. See, e.g., N.J.S.A. 12:3-1 (assigning to the DEP the task of "ascertain[ing] the rights of the state and of the riparian owners in the lands lying under the waters of the bay of New York, and elsewhere in the state").

Those authorities include coordinating shore protection programs. See N.J.S.A. 12:6A-1; see also N.J.S.A. 13:19-16.1 and -16.2 (creating a "Shore Protection Fund" to appropriate monies for shore protection projects). Accordingly, the statutes authorizing the DEP to condemn private property and to

protect the shore should be read in pari materia with the statutes that define the DEP's responsibilities and powers. Nw. Bergen Cty. Utils. Auth. v. Donovan, 226 N.J. 432, 444 (2016) (stating that "[s]tatutes that deal with the same matter or subject should be read in pari materia and construed together as a 'unitary and harmonious whole'" (alteration in original) (quoting Saint Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 14-15 (2005))).

The broad language used by the Legislature in N.J.S.A. 12:6A-1, reflects the legislative intent to grant broad powers and discretion to the DEP with regard to shore protection. For example, the Legislature stated that the DEP was to protect "every shore front along the Atlantic ocean" and "to undertake any and all actions and work essential to the execution of" that authority. N.J.S.A. 12:6A-1. At the time that the Legislature enacted N.J.S.A. 12:6A-1, it knew that it had already authorized a precursor to the DEP to condemn "any lands in the State, including riparian lands[.]" N.J.S.A. 12:3-64. Thus, read in conjunction, the two statutes give the DEP broad discretion to acquire lands, either in fee simple or with a lesser interest, such as an easement, for the purposes set forth in the statutes.

The history of beach protection also supports our holding that the Legislature intended to grant the DEP broad discretion

to acquire various types of interests in lands. Since 1986, and the enactment of the WRDA, the DEP has repeatedly partnered with the Army Corps to protect the New Jersey shoreline. The passage of the Sandy Act in 2013 highlighted the need for the DEP to work in conjunction with the Army Corps. The agreements between the DEP and the Army Corps expressly require the DEP to acquire all necessary property interests, including easements so that the Army Corps can build the projects authorized by the Sandy Act.

In the thirty years since 1986, and more recently in the years since the passage of the Sandy Act, the Legislature has been aware that the DEP would be acquiring various types of interests in lands to protect the New Jersey coastline. Implicitly, therefore, the Legislature expected the DEP to facilitate both the WRDA and the Sandy Act by acquiring various types of property interests, through condemnation when necessary.

Appellants argue that traditionally municipalities have been responsible for shore protection and thus the DEP cannot independently acquire property for the purpose of protecting the shoreline. In making this argument, appellants point to N.J.S.A. 40:56-1(h), which allows municipalities to improve beach or waterfront and provide protection to prevent damage to

lands by the ocean. They also cite N.J.S.A. 40:68-27, which allows municipalities bordering tidal waters to create and establish beach erosion control districts, and N.J.S.A. App. A:9-51.5, which gives municipalities the authority to construct and repair protective barriers bordering the Atlantic Ocean and Delaware Bay. Appellants also argue that a survey of past cases reveals that municipalities were the entities that exercised the power of eminent domain and acquired properties for the purpose of shore protection. See, e.g., Klumpp v. Borough of Avalon, 202 N.J. 390, 397-98 (2010); Petrozzi v. City of Ocean City, 433 N.J. Super. 290, 297-98 (App. Div. 2013), certif. denied, 217 N.J. 623 (2014).

That practice, however, does not establish the absence of alternatives to achieve the same end. Nothing in the statutes cited by appellants implicitly or explicitly granted municipalities the exclusive authority over the construction and repair of beaches. See N.J.S.A. 40:56-1(h), N.J.S.A. 40:68-27, and N.J.S.A. App. A:9-51.5. Further, as we have explained, under N.J.S.A. 12:3-64, the Legislature expressly provided the DEP with the authority to condemn properties for the purpose of shore protection.

The Legislature's intent is also reinforced by our 1969 decision in Archer, supra, 107 N.J. Super. 77. In Archer, we

addressed a lawsuit where private property owners challenged the authority of the DEP's predecessor (the DCED) to exercise the power of eminent domain to acquire lands for shore protection. Id. at 78. We held that N.J.S.A. 12:3-64 gave the DCED, now the DEP, the authority to condemn lands "for the purposes of hurricane and shore protection." Id. at 79.

Accordingly, we rejected the claim that the DEP lacked statutory authority under N.J.S.A. 12:3-64 to condemn property for shore protection purposes. Instead, we held that N.J.S.A. 12:3-64 should be "read broadly so as to permit the [DEP] to achieve the salutary purposes outlined in the act," and that "[p]articipation by the Department in the Federal flood control program via this act is fully warranted." Ibid.

In the almost fifty years since Archer was decided, the Legislature has taken no action to amend the statute, nor has it given any indication that this court was mistaken in Archer. Accordingly, the Legislature has implicitly endorsed our interpretation that that the DEP has broad powers to protect the New Jersey shoreline. See Cavuoti v. N.J. Transit Corp., 161 N.J. 107, 133 (1999) (explaining that "when a statute has been judicially construed, the failure of the Legislature subsequently to act is evidence of legislative acquiescence in the construction given"). Moreover, since the Archer decision

was handed down, the Legislature has passed additional laws expanding the DEP's shore protection authority and funding the agency's shore protection efforts.  See, e.g., N.J.S.A. 13:19-16.1 to -16.3 (creating a shore protection fund).

In summary, both the express language of N.J.S.A. 12:3-64 and the broad powers conferred on the DEP support the interpretation that the statute authorizes the DEP to acquire any type of property interest in private property in order to protect the New Jersey coastline.

B.    The DEP Can Take a Perpetual Easement and Allow for Public Access

Appellants argue that even if the DEP has authority to take an easement, it cannot take a perpetual easement and any such easement cannot allow for public access and use.  We disagree.

1.    Perpetual Easements

As we have already explained, N.J.S.A. 12:3-64 authorizes the DEP to take any type of property interest in lands needed to protect the New Jersey shoreline.  Nothing in that statute limits the duration of the interest to be taken.  Indeed, a fee simple is an estate of potentially infinite duration. Restatement (First) of Property § 14(a)(i) (1936).  Moreover, the statute provides that DEP can take "any lands . . . of such area and extent which, in the

discretion of the department, may be deemed necessary and advisable." N.J.S.A. 12:3-64.

Appellants argue that Congress limited the time for projects under the WRDA to fifty years. 33 U.S.C.A. § 2220. Thus, they contend that the DEP does not require a perpetual easement. The fifty-year time frame in the WRDA, however, relates to federal indebtedness and federal loans. In that regard, the federal statute states, in relevant part:

> [T]he Secretary of Commerce is authorized to purchase evidences of indebtedness and to make loans for a period not exceeding fifty years to enable responsible local interests to meet the requirements of local cooperation pertaining to contributions toward the cost of construction of such projects within such areas.
>
> [33 U.S.C.A. § 2220(a).]

Nothing in the WRDA or the Sandy Act limits the DEP's discretion and authority to take perpetual easements. Accordingly, Congress' limitation on the timeframe for financing projects under the WRDA does not limit the DEP's authority to take a perpetual easement.

2. Public Access

Appellants also argue that the DEP lacks authority to take an easement that includes the right of public access and use. The DEP counters that it has such authority and that the Army Corps mandates public use of the project areas as a condition

for federal funding.  We hold that the DEP acted within its discretion in including public access and use in the easements and that authority for such access and use is contained in N.J.S.A. 12:3-64 and the public trust doctrine.

Initially, it is important to define the scope of the public access and use contained in the easements.  Appellants contend that the easements effectively create a public beach in the area covered by the easements.  The DEP responds that the reference to a "public beach" in the easements does not mean that the State is acquiring public ownership over the beaches. Instead, the DEP argues that "federal law requires that public funds for shore protection projects not be used to benefit private lands from which the public is barred access."  Further, "to ensure full federal financial participation, the Army Corps requires [the] DEP to acquire sufficient interests in privately owned beaches to allow not only project construction, but use of project areas by the public."

The easements themselves make clear that the property owners retain ownership of, and the right to use, the area covered by the easements.  The easements also make clear that the State of New Jersey, the relevant municipality, and "their representatives, agents, contractors and assigns" can go on to the easement areas and construct and maintain systems to protect

against storm damage and prevent erosion. In that regard, the easements state that the State and its representatives have perpetual easements and right-of-ways to

> [c]onstruct, preserve, patrol, operate, maintain, repair, rehabilitate, and replace a public beach, dune system, and other erosion control and storm damage reduction measures together with appurtenances thereto, including the right to deposit sand, to accomplish any alterations of the contours on said land, to construct berms and dunes, and to nourish and renourish periodically[.]

The easements also allow for public use and access to the easement areas. Specifically, the easements provide that the State and its representatives have the additional right to

> [p]erform any other work necessary and incident to the construction, periodic renourishment, and maintenance of the [Projects], together with the right of public use and access[.]

Read in full context, the easements give the State and its federal partner, the Army Corps, the right to enter the areas covered by the easements and construct and maintain systems to protect against storm damage and prevent erosion. The easements also give the public the right to "access and use" the easement areas.

Appellants and the DEP dispute whether federal law mandates public use and access. We agree with the DEP that the Army Corps has interpreted its responsibility to include requiring

public access and use of Project areas funded by federal monies. Such a federal requirement, however, does not establish the DEP's authority to acquire easements with public access and use. Instead, the source of the DEP's authority must be found in state law. The public access and use called for by the federal law is only a requirement for receiving federal funding for the Projects.

The New Jersey law that gives the DEP its authority to include a public access and use requirement is N.J.S.A. 12:3-64. By authorizing the DEP to acquire full title, that statute also authorizes the DEP to acquire a lesser interest with a public access and use right. In other words, because the DEP could have taken title in fee simple, and thereby given the public the right to have access and use of the land, the DEP also has the "discretion" to take easements with a right of public access and use.

Our interpretation of the ambit of rights granted by N.J.S.A. 12:3-64 is supported by the evolution of the New Jersey public trust doctrine. Under the New Jersey public trust doctrine, the shores of New Jersey are open to public use and access by "all on equal terms." Matthews v. Bay Head Improvement Assoc., 95 N.J. 306, 322 (quoting Borough of Neptune City v. Borough of Avon-by-the-Sea, 61 N.J. 296, 309 (1972)),

cert. denied, 469 U.S. 821, 105 S. Ct. 93, 83 L. Ed. 2d 39 (1984); see also Raleigh Ave. Beach Assoc. v. Atlantis Beach Club, Inc., 185 N.J. 40, 53 (2005) (explaining that, under the public trust doctrine, the public's interest in "privately-owned dry sand beaches" includes both "'a right to cross [such] privately owned . . . beaches in order to gain access to the foreshore . . . [and a] right to sunbathe and generally enjoy recreational activities' on the dry sands" (alterations in original) (quoting Matthews, supra, 95 N.J. at 322-23)).

The public trust doctrine has evolved and adapted to the "changing conditions and needs of the public it was created to benefit." Borough of Neptune City, supra, 61 N.J. at 309. Thus, the public trust doctrine extends to "recreational uses[,]" including the right of the public to access and use the shore for "swimming and other shore activities." Ibid. "In addition, limited use of the upland owner's dry sand is permitted under the public trust doctrine when it is 'essential or reasonably necessary for enjoyment of the ocean.'" City of Long Branch, supra, 203 N.J. at 475 (quoting Matthews, supra, 95 N.J. at 325).

Moreover, when a publicly funded beach replenishment project creates new dry sand lands, such lands are owned by the State and are open to the public. Id. at 485. Accordingly,

interpreting N.J.S.A. 12:3-64 to include the authority for the DEP to acquire easements with public access and use rights, when the public is funding the Projects, is consistent with the New Jersey public trust doctrine.

While the DEP has such authority, it must provide "just compensation" for such a taking. N.J. Const. art. IV, § 6, ¶ 3. The commissioners appointed by the trial court in accordance with the EDA will establish such compensation. N.J.S.A. 20:3-12; see also N.J.S.A. 20:3-13 (setting forth the rights and procedures for appealing the commissioners' award).

C. The DEP Complied with the EDA and Conducted Bona Fide Negotiations

The North Beach 1003 and Frankenberg defendants argue that the DEP failed to conduct bona fide negotiations as required by the EDA. Defendants then make a series of arguments that the DEP failed to do certain things in its interactions with the North Beach 1003 and Frankenberg defendants. Accordingly, defendants argue that the DEP's condemnation complaints should be dismissed. We disagree. The record establishes that the DEP satisfied the pre-litigation requirements of the EDA and engaged in bona fide negotiations.

The EDA requires the condemnor to take certain steps prior to commencing litigation. N.J.S.A. 20:3-6. Those steps include

appraising the property and engaging in bona fide negotiations with the property owners. Ibid.

Before making an offer, "the taking agency shall appraise said property and the owner shall be given an opportunity to accompany the appraiser during the inspection of the property." N.J.S.A. 20:3-6; see also Borough of Rockaway v. Donofrio, 186 N.J. Super. 344, 351 (App. Div. 1982), certif. denied, 95 N.J. 183 (1983). Accordingly, the condemnor or its agent must send written notice to the property owner at least ten days before going to the property to conduct the appraisal. N.J.S.A. 20:3-16.

The condemnor must then provide the property owner with a written offer, "setting forth the property and interest therein to be acquired, the compensation offered to be paid and a reasonable disclosure of the manner in which the amount of such offered compensation has been calculated[.]" N.J.S.A. 20:3-6. In connection with that offer, the condemnor must engage in "bona fide negotiations" with the owner. Ibid.

The purpose of these procedures is to facilitate the acquisition without litigation and thereby save the parties time and expense. Hous. Auth. of New Brunswick v. Suydam Inv'rs, L.L.C., 177 N.J. 2, 15 (2003); State ex rel. Comm'r of Transp. v. Town of Morristown, 129 N.J. 279, 285 (1992). Failure of the

condemnor to comply with the pre-litigation requirements can result in dismissal of the complaint. State by Comm'r of Transp. v. Carroll, 123 N.J. 308, 316 (1991); Donofrio, supra, 186 N.J. Super. at 354.

Whether the negotiations between a condemnor and a property owner satisfy the mandates of the EDA is a fact-specific question, which should be evaluated on a case-by-case basis. County of Morris v. Weiner, 222 N.J. Super. 560, 567 (App. Div.) certif. denied, 111 N.J. 573 (1988). Generally, a condemnor and the condemnee should deal with each other in a forthright manner. F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426-27 (1985). The government entity should be candid. "The reasonableness of pre-negotiation disclosure centers on the adequacy of the appraisal information; it must permit a reasonable, average property owner to conduct informed and intelligent negotiations." Carroll, supra, 123 N.J. at 321. Accordingly, "an appraisal should contain an explanation of the valuation approach or methodology actually used." Ibid.

Negotiations, however, involve participation by both sides. County of Monmouth v. Whispering Woods at Bamm Hallow, Inc., 222 N.J. Super. 1, 9 (App. Div. 1987) ("We would be short on realism . . . were we not to note that it takes at least two to negotiate and the record should be reviewed with that in

mind."), certif. denied, 110 N.J. 175 (1988). Consequently, the condemnor's duty to engage in extended negotiations can be "tempered by a property owner's failure to cooperate." Carroll, supra, 123 N.J. at 323; see also Borough of Merchantville v. Malik & Son, LLC, 429 N.J. Super. 416, 430-31 (App. Div. 2013), aff'd, 218 N.J. 556 (2014) (explaining that when the DEP makes its best offer and a property owner is unwilling to engage in negotiations, the DEP's obligation to engage in bona fide negotiations is satisfied).

Here, the appraiser provided the property owners with notice of the inspection and invited the owners to attend the inspection. A few owners accepted that invitation, but many did not. The DEP then provided the property owners with a written offer and a copy of the appraisal. The appraisal explained the methodology used and the offer letter identified the easement to be taken. Moreover, the offer letters were sent in mid-September 2015, and gave the owners fourteen days to respond. Thereafter, attorneys for the property owners engaged in communication with the attorneys for the DEP.

The North Beach 1003 defendants contend that the DEP did not engage in bona fide negotiations because the discussions were truncated and the DEP's offer was not its "best offer." Specifically, the North Beach 1003 defendants contend that the

offer did not compensate them for the creation of "a public beach" on their properties and their loss of access.

The record establishes that negotiations took place, but resolutions were not reached. The appraisals provided to the North Beach 1003 defendants contained a detailed explanation of the methodology that was used. The appraisals determined the Projects would generally increase the value of properties by ten percent. In making that determination, the appraiser used studies of how the value of properties in nearby neighborhoods had been affected by past beach replenishment projects. The ten percent increase in value was then adjusted in each case to reflect how the Projects would affect a particular property. For example, reducing the valuation because the dune will interfere with a property's view of the ocean.

These explanations of the methodology were sufficient to allow for meaningful and intelligent negotiations. Nevertheless, "[t]he condemning authority's obligation to conduct good faith negotiations does not end with making an offer and furnishing the appraisal on which the offer was formulated." Borough of Merchantville, supra, 218 N.J. at 572. "[T]he condemning authority may have an obligation to continue to discuss the offering price when the response provides

credible information supporting its opinion that the offer is too low."  Id. at 572-73.

Here, although defendants contended that the appraisal methodology was flawed, they provided no credible information supporting their opinion that the DEP's offer was too low.  The appraisals did not fail to consider the public access and use. Instead, the appraisals valued the public use and access using comparative studies of other neighborhoods that have undergone beach replenishment projects.  Defendants merely disagree with those values.

The North Beach 1003 defendants also argue that the appraisals failed to value the requirement for defendants to acquire a permit for and construct walkovers on the dune to access the beach.  Those walkovers must be removed at the end of each summer season.  The appraisals, however, specifically discussed how such walkovers would be necessary, indicating that the need for and the seasonal nature of the walkovers were considered in valuing the properties. Defendants, again, simply disagree with these valuations.  In short, there is nothing in the record to support the contention that the offers were not the DEP's best offers or that the DEP failed to engage in bona fide negotiations.

Since the DEP engaged in bona fide negotiations, any further disagreement concerning the valuations of the takings are matters to be addressed by the commissioners and, if necessary and appropriate, further litigation. N.J.S.A. 20:3-12; see also Suydam, supra, 177 N.J. at 16.[4]

The North Beach 1003 and Frankenberg defendants also argue that the DEP did not negotiate with them. In that regard, they contend that the DEP did not give them adequate time to prepare their own appraisals. The reasonableness of a property owner's request for more time to negotiate depends on the circumstances. Weiner, supra, 222 N.J. Super. at 566. Here, the DEP was acquiring easements to construct federally-funded projects that will protect coastal residents and communities. Under these circumstances, the DEP had the right to request reasonable responsiveness in negotiations and when those negotiations did not result in agreements, to proceed to litigation.

The Frankenberg defendants argue that the notice provided by Mr. Hall did not constitute notice from the DEP. They then

---

[4] The North Beach 1003 defendants cite to several unpublished cases in support of their arguments concerning the DEP's alleged failure to engage in bona fide negotiations. Unpublished cases are not precedent and do not warrant discussion. R. 1:36-3; Lippman v. Ethicon, 222 N.J. 362, 385 n. 5 (2015). We note, however, that the unpublished cases cited by the North Beach 1003 defendants are distinguishable and do not support their arguments.

argue that the DEP did not engage in bona fide negotiations concerning their loss of views. The record establishes that Hall was acting as an agent for the DEP. It is undisputed that the DEP sent Hall's appraisal together with its offer. The record also establishes that it was the Frankenberg defendants who failed to participate in Hall's appraisal. In short, the DEP engaged in bona fide negotiations with the Frankenberg defendants.

The Frankenberg defendants also argue that the DEP failed to join indispensable parties. In that regard, they point to a six-foot-wide walkway easement on the southerly edge of their property. The DEP's title search did not disclose any holders of a walkway easement on the Frankenberg property. While there is apparently such an easement, the Frankenberg defendants did not produce evidence of the parties that hold an interest in the walkway easement. Consequently, all known parties with an interest in the Frankenberg property were named in the DEP's condemnation complaint.

Finally, the Frankenberg defendants claim that the DEP's agreements with the Army Corps prevented the DEP from engaging in bona fide negotiations. Nothing in the project coordination agreements between the DEP and the Army Corps prevented bona fide negotiations. While the agreements called for the DEP to

use a federally-approved form of appraisal, nothing in that agreement prevented the DEP from re-submitting the appraisal if it negotiated a new form.

D.  The Trial Court Properly Dismissed the Declaratory Judgment Action Filed by the Ritter Appellants

The Ritter appellants sought a declaration that the DEP lacked authority to condemn easements for shore protection purposes. Given that we have rejected that argument, the trial court properly dismissed the declaratory judgment complaint.

In summary, we affirm the trial court's final judgments finding that the DEP properly exercised its power of eminent domain and appointing commissioners to determine the value of the takings. We also affirm the trial court's orders denying the North Beach 1003, Frankenberg, and Cammarano defendants' motions to dismiss the condemnation complaints and the order granting summary judgment to the DEP on the declaratory judgment action brought by the Ritter appellants.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3393-15T4