NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2071-17T4

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
OFFICE OF FLOOD HAZARD
RISK REDUCTION MEASURES,

     Plaintiff-Respondent,

v.

MIDWAY BEACH
CONDOMINIUM
ASSOCIATION, INC.,

     Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

April 16, 2020

APPELLATE DIVISION

Argued February 3, 2020 – Decided April 16, 2020

Before Judges Fasciale, Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey,
Law Division, Ocean County, Docket No. L-2653-17.

Anthony F. DellaPelle argued the cause for appellant
(McKirdy, Riskin, Olson & DellaPelle, PC, attorneys;
Anthony F. DellaPelle, of counsel and on the brief; L.
Jeffrey Lewis and Alan Zhang, on the briefs).

Avram S. Eule argued the cause for respondent
(Carella, Byrne, Cecchi, Olstein, Brody & Agnello,
PC, attorneys; Donald F. Miceli, of counsel and on the
brief; Avram S. Eule, on the brief).

The opinion of the court was delivered by

FASCIALE, P.J.A.D.

In this condemnation action, defendant Midway Beach Condominium Association (Midway) appeals a December 1, 2017, final judgment in favor of the Department of Environmental Protection (DEP), allowing DEP to take a portion of Midway's private property for an easement as part of a shore protection system, known as the Manasquan Inlet to Barnegat Inlet Hurricane and Storm Damage Reduction Project (the Project). The judge considered whether DEP's taking of the easement was proper given a preexisting dune system. Defendant contends the judge erred by issuing a final judgment authorizing the taking without a plenary hearing.

On appeal, defendant reiterates arguments made by the defendants in related appeals, namely, that DEP failed to engage in bona fide negotiations, that N.J.S.A. 12:3-64 does not authorize the taking, and that the taking was arbitrary and capricious. Defendant also argues that DEP failed to include all interested parties because it did not name all individual condominium owners as defendants in its condemnation action.[1]

---

[1] We listed this appeal back-to-back with State v. 3.814 Acres of Land in the Borough of Point Pleasant Beach, State v. 10.041 Acres of Land in the Borough of Point Pleasant Beach, and State v. .808 Acres of Land in the Borough of Point Pleasant Beach (collectively Risden's); sixty-three

In September 2017, DEP filed a verified complaint and an order to show cause against Midway, seeking an easement on Midway's beachfront property. DEP offered Midway $500 based on a real estate appraisal performed by Jeffrey Otteau. In October 2017, Midway submitted an expert report by Andrew Raichle, who opined that the Project was unnecessary for shore protection because of Midway's preexisting dune system. In November 2017, DEP's representative William Dixon certified that despite the existing dune's superfluous height, the dune did not provide adequate shore protection because it contained gaps and cuts. He further emphasized that Midway's beach berm was narrower than what the Project suggested. Midway sought a plenary hearing to determine whether the Project was necessary. On December 1, 2017, the judge heard oral argument, denied the request for a hearing, and entered final judgment in favor of DEP.

Midway's beachfront property consists of approximately seventy acres of land, ten acres of beach, and 390 condominiums. Each condominium owner owns a share of the beach area. Midway has a preexisting storm protection system consisting of sand dunes anchored with recycled trees, fencing, and

consolidated cases known as State v. 1 Howe Street Bay Head, LLC (Howe); and a pro se appeal entitled State v. Arthur Williams (A-1484-17) (Williams). On today's date, we issued opinions in Howe, Risden's, and Williams.

vegetation. The average peak elevation of the dunes is 27 North American Vertical Datum (NAVD), and their width is greater than 150 feet. Midway privately maintains its system.

According to Otteau's appraisal, after DEP's condemnation, Midway's property size would not be reduced, the views from the condominiums would improve or remain unchanged, and the beach area would increase from 8.98 to 12.57 acres. Otteau estimated that after the taking, the property's value would increase from approximately $46 million to $48 million. Therefore, Otteau speculated that DEP should pay Midway $500 in nominal consideration.

I.

Midway argues that the judge erred in her conclusions of law and refusal to conduct a plenary hearing.

The judge stated:

> [R]ecognizing the right of eminent domain, [the court] does find that there is a lack of evidence that . . . DEP's exercise of eminent domain was arbitrary, capricious and unreasonable. The question is whether or not there is sufficient evidence of arbitrariness that's been raised by [Midway], that would warrant a plenary hearing[.]
>
> [I]t would be difficult to not come to the conclusion that . . . DEP is within its rights to take the action that it's taking.

In concluding that DEP was within its rights to take the easement, the judge relied on evidence presented in a related plenary hearing, which she presided over in February 2017.

We are satisfied that no plenary hearing was required. Pursuant to Rule 4:67, DEP was authorized to bring its condemnation action in the trial court in a summary manner. R. 4:73-1. In such an action, if there is no genuine issue as to any material fact, the judge can dispose of the matter without a plenary hearing. R. 4:67-5.

In this case, defendants failed to prove such a triable issue of fact. The fact that a de minimis offer was made does not infer that bona fide negotiations did not occur. Defendants do not dispute any of the underlying facts surrounding the de minimis offer, and thereby should not be afforded a plenary hearing. See Coastal Eagle Point Oil Co. v. Township of West Deptford, 353 N.J. Super. 212, 218 (App. Div. 2002) (requiring a plenary hearing when defendant makes a prima facie showing of the asserted claim). Dixon's certification demonstrated Midway's dune system was inadequate, including that it was too small in certain areas and that there were gaps in it.

Because defendants failed to dispute any material fact, we conclude the judge did not abuse her discretion by proceeding without a hearing.

A-2071-17T4

II.

Midway joins <u>Howe</u> and <u>Risden's</u> related appeals on the following arguments: N.J.S.A. 12:3-64 does not authorize the taking; DEP acted arbitrarily and capriciously because the taking was unnecessary; DEP did not engage in bona fide negotiations; and this court should reject <u>State v. North Beach 1003, LLC</u>, 451 N.J. Super. 214 (App. Div. 2017), and <u>State v. Archer</u>, 107 N.J. Super. 77 (App. Div. 1969). As to these issues, we rely on our analysis in those opinions and reiterate the following.

This court in <u>North Beach</u> held that N.J.S.A. 12:3-64 expressly authorizes DEP to condemn properties for shore protection and to acquire "any type of property interest," including a perpetual easement to protect the coastline. 451 N.J. Super. at 237-38. Because DEP could have taken the property in fee simple, it also had discretion to take a lesser interest, such as an easement with a right of public access and use. <u>Id.</u> at 234-35.

Defendant next contends that the taking was arbitrary and capricious because DEP will not properly maintain the Project's dune and berm system and therefore, the shore protection will be worse than when Midway's system was in place.

Dixon certified that there were gaps and breaks in Midway's dune system, and therefore opined that the Project was necessary to ensure

6

uniformity and stability. The judge maintained: "The testimony in [related matters] informed the [c]ourt that the plan was to have a continuous project that went down to Island Beach State Park . . . it was felt that there was no need for a dune system since there were no significant structures there[.]"

As we can infer from the judge's statement, this area would benefit from a continuous dune system as there is a significant structure to protect here—Midway's condominiums.

The judge declared:

> And after a ten-day trial, I believe, on that matter, that the [c]ourt determined . . . ultimately that the actions of . . . DEP in making a decision to proceed with this [P]roject and to do the condemnation taking was not found to be arbitrary and capricious even though I think reasonable people could differ as to . . . whether or not there was an alternative that was available that might have been just as comprehensive, that it was within the discretion of the taking authority to decide, based upon valid engineering principles, what project it was going to support and to do, and that there was no evidence of any fraud or other unreasonable action by [DEP.]

The judge stated that it would be hard to find that DEP had no right to take the easement.

Defendant presented no evidence of arbitrariness. Dixon's certification corroborated the notion that the Project would provide additional protection

where there were gaps in the existing storm protection system. Thus, the taking of the easement was not arbitrary or capricious.

Defendant also argues that DEP did not engage in bona fide negotiations because it offered a nominal amount, stating that the Project would increase the value of the property, but did not consider the preexisting storm protection nor negotiate in good faith. We disagree.

DEP sent Midway's counsel an offer letter wherein it announced its intention to purchase the easement at fair market value. The offer letter disclosed the valuation method used and the completed appraisal. Midway never attempted to negotiate the voluntary grant of the easement. It claimed that negotiations were futile, as it could not voluntarily provide the easement because the association's bylaws required unanimous approval by its 390 members.

Furthermore, the judge found that there was an offer, which Midway rejected. She stated that because there was an offer, this was not a bona-fide-negotiations issue, but rather a valuation-of-property issue.

> [T]he position of . . . DEP is that the taking actually enhances the protection of the property and then enhances the value of the property. That is disputed by the association. It is not the function of this [c]ourt to decide the issue of. . . which theory of valuation prevails but rather, to find that [there] is an issue that is best left to the determination of the condemnation commissioners.

A-2071-17T4

We see no reason to disturb the judge's finding.

III.

Defendant argues that DEP failed to include all interested persons, specifically individual condominium association members, as parties to the condemnation complaint. It argues that each condominium owner has access to the beachfront property and is permitted to use it; thus, the taking will eliminate each property owner's access to and use of the property by converting it to a public beach.

N.J.S.A. 46:8B-25 provides:

> If all or any part of the common elements shall be taken, injured or destroyed by eminent domain, <u>each unit owner shall be entitled to notice of such taking and to participate through the association in the proceedings incident thereto. Any damages shall be for the taking, injury or destruction as a whole and shall be collected by the association and distributed by it among the unit owners in proportion to each unit owner's undivided interest in such common elements,</u> except to the extent that the association deems it necessary or appropriate to apply them to the repair or restoration of any such injury or destruction.
>
> [(Emphasis added).]

"[O]rdinarily a [condemnor] is not required to undertake the burden of negotiating with each and every interest holder in private property." <u>Town of Kearny v. Disc. City of Old Bridge, Inc.</u>, 205 N.J. 386, 407 (2011) (citing <u>City</u>

of Atlantic City v. Cynwyd Invs., 148 N.J. 55, 70-71 (1997)).  "[W]here a fee simple is being condemned, negotiations will take place with the fee owner alone[.]"  Ibid.  The rights of all other condemnees with a compensable interest are better protected by allowing them to participate in the commissioners' hearing, where just compensation is determined.  Ibid.

Defendant concedes that the condominium association owns the beachfront property. But N.J.S.A. 46:8B-25 specifically provides that a condominium owner should participate in the condemnation proceedings through its association, and the association should collect and distribute damages to each individual owner.  The judge stated that DEP did not have an obligation to join the individual property owners because Midway protected their rights of access.  She noted that "th[is] statute itself seems to indicate that the rights of the individual property owners are presumed to be protected or . . . that the association itself in a condominium [association] is the proper party for this matter."  Being that the statute supports the judge's finding, we find no abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10                                                                    A-2071-17T4