**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5655-17T3

TOWNSHIP OF ROBBINSVILLE,

    Plaintiff-Respondent,

v.

MERCER MHC, LLC, d/b/a MERCER
MOBILE HOME PARK,

    Defendant-Appellant,

and

DIANA J. SORENSEN, LUCIANO
PAPA, ALICE DI AMICO, ELAINE
WALTERS, DENISE L. GORCSCOS,
RICHARD LAKIN, GIOVANNI PAPA,
RICHARD IRVIN, WENDY J.
HOPKINS, STEPHEN LIVOLSI, SCOTT
MURRAY, NICOLE PEREZ, DANIEL J.
CRAMER, LORRAINE BIRKLE,
DANIEL CULLITON, JR., HENRY
WILBUR, JULIE PETO, LORENZ
HARMS, LORI SMITH, SANDRA
VALIUS, GLENN ESTELLE, IVAN
PIDZAMKIV, REBECCA DUTTON,
MICHAEL MAGUIRE, WILLIAM C.
EASTMOND, HELEN P. SPRAGUE,
DAVID PADDOCK, ANTHONY P.

IMMORDINO, PEARL BUSCH, CHARLES WOLLEYHAN, AUDREY LEESE, ELSIE DELCARPIO, BONNIE HORN, SHARON L. KELSALL, LINDA F. PEIFFER, PAUL CIANETTI, CARMELLA ONORATI, NICOLE GORDON, CARLA DIDONATO, WANDA OPACKI, SAMUEL LOMBARDO, JUNE SCARLATA, MICHAEL ANGELO BARONE, BRUCE J. BRIEL, VIRGINIA RAYWOOD, JARED BOGART, WILLIAM A. LYNN, ANTHONY T. CALLA, KATHLEEN WERESKI, LILLIAN A. CHRICHTON, ANTHONY DISTEFANO, SCOTT A. VASBINDER, WILLIAM MONTROSS, JAMES RUPRECHT, THERESA KRAUSE, MARY ANNUCII, RICHARD MANELLA, ANN GREANEY, RUSSELL LIBENSPERGER, MICHAEL R. FONDE, BENJAMIN JR MUHS, HELEN KUCHNICKI, GEORGE ONDA, MARGARET WILDGOOSE, GAIL NICHOL EPP, JOHN HENRY, KIMBERLY JARVIS, GIUSEPPE SUCCI, VICTOR PADRON RONALD MIRABELLI, CARMEN M. SOLIMANDO, LUZ EVANS, JOHN DOLAN, CHRISTOPHER SEEPKOWSKI, ELIZABETH RAYWOOD, ELEANOR MECANKO, CORNELIA R. SITKO, CHARLES O. HUBBARD, JR., JOHN LONGO, MILTON WILSON, EDWARD J. BERNHARDT, ROBERT DIFRANCO, DIANE H. STEELE, ELLEN JOHNSON, LAURA BROWER, DAWN L. WILT,

A-5655-17T3

RENEE F. DUTCHER, MICHAEL FITZGERALD, BARBARA TKACZUK, DONALD ARNESEN, DIANE F. VOLKER, LEAH P. BALFOUR, ROBERTO PEREZ, CHARLES O. HUBBARD, FRED MADDALENA, CARLTON CUBBERLY, PATRICIA DIGREGORIO, TIMOTHY G. SEXTON, ROBERT HILLAND, KATHLEEN TARANGIOLI, MARGARET KOLESAR, WILLIAMS WALTERS, JOSEPH DOUGHERTY, BEATRICE SUZCH, KENNETH E. PIERCE, WENDY RITARDI, STANLEY MOMOT, JOHNNY NUNEZ, GLENN TRAIL, ANN VARANYAK, BEVERLY A. TONNE, SALLY J. HARRISON, JOHN HUTMAN, IRENE JASENTO, RENE HURTADO, JOYCE REDDER, MILLIE ROBBINS, BRENDA ELIAS, ALEXANDRA AVALOS, CLARA TORRES, BERNADETTE MCCARTHY, STEPHEN BARTOLONE, LEANDRO E. RIVAS LOREZANO, LEANNA TOTH, SUSAN J. GOSS, MARIE DINATALE, MICHAEL SORIERO, VIOLET I. COMINSKI, ELIZABETH ALFANO, GST TRANSPORT CORP, COMBINED FORCES, and ROBBINSVILLE SIGN SHOP,

        Defendants.[1]

---

[1]  The individual defendants, resident tenants at Mercer Mobile Home Park (MMHP), were dismissed under the June 22, 2018 order. The Township was to provide all tenants with access to all orders entered in the case and defendants were not prohibited from seeking to participate in the matter in the future.

Argued December 19, 2018 – Decided March 25, 2019

Before Judges Ostrer, Currier and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0459-18.

Robert S. Baranowski argued the cause for appellant (Hyland Levin, LLP, attorneys; Robert S. Baranowski, and Julie M. Murphy, on the briefs).

Paul V. Renaud, III, argued the cause for respondent (Mason, Griffin & Pierson, PC, and Paul V. Renaud, III, Township Attorney; attorneys; Elissa Grodd Schragger and Paul V. Renaud, III, on the brief).

Adam M. Gordon argued the cause for amicus curiae Fair Share Housing Center (Fair Share Housing Center, attorneys; Adam M. Gordon, on the brief).

Christopher J. Hanlon argued the cause for amicus curiae New Jersey Manufactured Housing Association (Hanlon Niemann & Wright, PC, attorneys; Christopher J. Hanlon, on the brief).

PER CURIAM

On leave to appeal, we consider whether the municipality's eminent domain powers permitted the condemnation of a mobile home park to fulfill its affordable housing obligation. After a review of the record and applicable principles of law, we are satisfied the municipality's broad eminent domain powers authorize the taking of the mobile home park, and the subsequent deed

4                                                                    A-5655-17T3

restriction on the mobile homes will create and guarantee affordable housing. We affirm.

In 2015, plaintiff Township of Robbinsville (the Township) filed suit seeking a declaratory judgment that it was in compliance with the Mount Laurel[2] doctrine and the Fair Housing Act (FHA), N.J.S.A 52:27D-301 to -329.9. The Fair Share Housing Center (FSHC) intervened and, with the assistance of a special master, reached a settlement, with the court retaining jurisdiction to ensure compliance with Mount Laurel.

To comply in part with its affordable housing obligation, the Township sought to acquire defendant MMHP, which would provide seventy affordable housing units. The Township intends to create affordable housing by deed restricting the entire property, "affirmatively market[ing] to . . . new low- or moderate-income buyer[s]," and imposing affordability controls on the existing units as they are turned over from their current owners.

---

[2] In re Adoption of N.J.A.C. 5:96 and 5:97 by the New Jersey Council on Affordable Hous., 221 N.J. 1 (2015) (Mount Laurel IV); Hills Dev. Co. v. Twp. of Bernards, 103 N.J. 1 (1986) (Mount Laurel III); S. Burlington Cty. NAACP v. Twp. of Mount Laurel, 92 N.J. 158 (1983) (Mount Laurel II); S. Burlington Cty. NAACP v. Twp. of Mount Laurel, 67 N.J. 151, 174 (1975) (Mount Laurel I).

A-5655-17T3

Defendant Mercer, LLC (Mercer) owns real property in the Township. Lots 57.01 and 58.01 are adjoining properties, on which are located two commercial buildings with multiple tenants. Lot 59.01 is a fourteen-acre parcel of property on which MMHP – a 147-unit mobile home community – is located. In 2015, the Township's Affordable Housing Administrative agent contacted the then-management company for MMHP to discuss the Township's proposal to include MMHP in its affordable housing plan. At the time, Mercer was the contract purchaser of MMHP; Mercer closed on the property several weeks later. The Township discussed the need for sewer repairs within the development and Mercer advised it would provide the infrastructure improvements. Thereafter, the Township's agent attempted to schedule a meeting with Mercer but was rebuffed for more than a year – until March 2016. That meeting did not result in any meaningful discussions and Mercer declined to attend any further meetings.

Meanwhile, the Township reached a settlement regarding its Mount Laurel obligations, which included the acquisition of MMHP. Township officials set a meeting in March 2017 to discuss an amicable acquisition of MMHP, but Mercer did not attend.

That same month, the Township obtained an appraisal of the property.[3] The appraisal concluded the fair market value (FMV) for the taking of MMHP was $5,700,000.[4] As the Township was also considering the acquisition of adjoining lots 58.01 and 57.01, they were appraised and the FMV set for those lots at $750,000 and $630,000 respectively.

The Township passed an ordinance in September 2017, authorizing the funding to acquire MMHP and the two additional lots for $7,300,000. An October 2017 Resolution approved the appraisal, authorized an offer to Mercer for the properties, and initiated bona fide negotiations to acquire the lots.

On November 3, 2017, the Township made a written offer to Mercer of $7,080,000 for all three lots. The letter reiterated it was the "Township's preference to acquire the property by mutually acceptable agreement through voluntary negotiations" with Mercer, but, if the negotiations were unsuccessful, "the Township [was] authorized by law to acquire the property by the use of eminent domain."

---

[3] When the appraiser was retained months earlier, he contacted Mercer and requested certain information regarding the property. Mercer declined to provide the information. Mercer was notified of the appraiser's inspection date.

[4] The appraiser deducted $1,509,832 for the required sewer improvements. The FMV without the capital improvement deduction was $7,368,477.

Over the next four months, the Township and Mercer engaged in negotiations, which included meeting with the special master, however, they proved unsuccessful. In early February 2018, Mercer advised the Township that the proposed terms were unacceptable and "if the Township [was] committed to condemnation, then [Mercer would] be providing a counteroffer." In response, the Township amended its prior offer, advising it now sought to obtain only MMHP, not the additional lots, for the appraised value of $5,700,000. Mercer rejected the Township's offer, and, although it made a counteroffer eleven days later and advised an appraisal would follow within several days, no appraisal was ever presented. After waiting two weeks for the promised appraisal, the Township determined good faith negotiations had ended.

As a result, a third amended settlement agreement was executed in February 2018, between the Township and FSHC. The special master recommended the court approve the agreement. In part, the agreement stated:

> [The Township] undertook negotiations with the owner of the park . . . to deed restrict the entire park as part of the Township's declaratory judgment action. However, these negotiations were unsuccessful. As a result, the Township is committed to condemning the property utilizing money from its Affordable Housing Trust Account supplemented with municipal bonds to fund the acquisition cost.

At the fairness and compliance hearing regarding the settlement between the Township and FSHC, counsel appeared on behalf of Mercer as an interested party. Mercer advised it had notified the Township of its objection to the taking of MMHP by condemnation. All agreed the determination of whether condemnation was proper would be resolved in the newly filed condemnation action. Following the conclusion of the fairness hearing, the court found the settlement agreement was fair and provided a realistic plan for the Township to meet its affordable housing obligation. In addition, the deed restriction to be imposed on MMHP was an appropriate public purpose in accordance with the aim of the FHA.

On May 15, 2018, the court heard oral argument on Mercer's motion to dismiss the order to show cause and verified complaint filed by the Township. The verified complaint sought a declaration of authority to acquire MMHP by condemnation and for an appointment of commissioners to set the fair compensation for the taking of the property. Mercer argued the Township had failed to engage in bona fide negotiations.

In an oral decision, the judge found the Township had complied with the bona fide negotiations requirement under the Eminent Domain Act, N.J.S.A. 20:3-1 to -50, by "engag[ing] in significant negotiations with the mobile home

park." Although the judge acknowledged the filing of the eminent domain action was soon after the Township's February 6 offer to acquire only MMHP, "it was always known that if the negotiations to avoid condemnation altogether failed that [the Township] was going to move forward with all haste to take this property." The judge also pointed out that Mercer had not appeared for scheduled meetings or provided information requested by the Township and the appraiser.

The judge noted she had granted Mercer additional time to negotiate with the Township following the municipality's November 3, 2017 written offer, and the ensuing meetings and communications that took place over the next several months. When the Township determined negotiations had failed, it filed the complaint. Mercer had not asked for more time to prepare and present its counteroffer or appraisal.

The judge also addressed Mercer's argument that the Township had not demonstrated the taking of MMHP satisfied a public purpose. The judge noted it was previously determined, in the affordable housing settlement hearing, that the acquisition of MMHP satisfied a portion of the Township's affordable housing obligations. The judge referenced the FHA, and specifically N.J.S.A. 40:55D-105 providing that a municipal agency is "encouraged to review [its]

regulations to determine whether . . . mobile home parks are a practicable means of providing affordable housing in the municipality." The judge reasoned a deed restriction ensuring a property cannot be used for anything other than affordable housing is clearly a public purpose.

The judge issued two orders on May 29, 2018. The first granted the Township the right to exercise eminent domain over MMHP and appointed commissioners to 1) examine and appraise the land, and 2) determine just compensation. The second order denied Mercer's motion to dismiss.

Mercer moved for reconsideration, contending the court did not address arguments that a taking of MMHP would not increase the number of affordable units in the Township, and that the municipality did not have the authority to deduct capital expenses in an eminent domain proceeding. Following argument, the court issued an oral decision on July 6, 2018.

The judge again thoroughly explained her reasoning supporting the denial of Mercer's dismissal motion. She found the taking of MMHP would create affordable housing because, although "the pads may be inherently affordable, they're not deed restricted. The people who can live there are not limited to those who have low and moderate incomes and there's no one overseeing that process." The Township's fifty-year deed restriction and the required affordable

housing guidelines would ensure the use of the pads for affordable housing well into the future. Because the Township had substantial deference to exercise eminent domain and the deed restriction would create a "guarantee that the housing will remain affordable," the judge stated the Township had demonstrated a public purpose.

Next, Mercer argued that because the Legislature omitted the word "condemnation" under the Local Lands and Buildings Law, N.J.S.A. 40A:12-1 to -38, the statutory provision did not grant a municipality the power to make capital expense deductions in the context of an eminent domain proceeding.[5] The judge rejected this argument, finding the capital expense deduction related to the issue of just compensation, not condemnation authority. She stated, "I don't think the appraisal which includes . . . an amount with and without the capital improvement is something that requires the dismissal of the condemnation action." Mercer's motion for reconsideration was denied on August 8, 2018. We granted Mercer's application for leave to appeal and stayed the May 29, 2018 order.

We apply a de novo review in considering whether a government entity has statutory authority to condemn private property. State v. N. Beach 1003,

---

[5] See N.J.S.A. 40A:12-5(a)(3).

LLC, 451 N.J. Super. 214, 229 (App. Div. 2017). However, we "defer to the trial court's factual findings regarding the negotiations conducted by the [governmental entity]." Ibid. (citing Tractenberg v. Twp. of W. Orange, 416 N.J. Super. 354, 365 (App. Div. 2010)). Factual findings are only reversed if "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974).

On appeal, Mercer asserts the trial court erred in 1) finding Mercer was collaterally estopped from contesting the Township's authority to condemn MMHP; 2) finding the Township had authority to condemn MMHP; 3) finding the Township engaged in bona fide negotiations with Mercer; 4) permitting the Township to deduct capital improvement costs from the estimate of just compensation; and 5) finding the Township's exercise of its eminent domain powers was not arbitrary, capricious, and in bad faith.

In addressing Mercer's contentions, there are several arguments that overlap with another and essentially assert that the Township was not authorized to condemn MMHP. We are not persuaded by these arguments.

In Mount Laurel I, the Supreme Court recognized "[m]obile homes offer an alternate, less expensive form of housing. They have long since ceased to be

mere 'house trailers' but have become an important form of mass produced semi-permanent housing." 67 N.J. at 202. In Mount Laurel II, the Supreme Court reiterated that mobile homes are "economically available for persons of low and moderate income," thus establishing that mobile homes could be considered as a mechanism to satisfy affordable housing needs. 92 N.J. at 275 (citation omitted).

It is undisputed that the condemnation of MMHP as a mobile home park is a public purpose as established by our Legislature and Supreme Court. The acquisition and deed restriction of MMHP was part of the settlement reached between the Township and FSHC in the affordable housing litigation. The special master recommended approving the agreement. Mercer's counsel was present at the fairness hearing in May 2018, where the judge found the plan for MMHP was an appropriate public purpose and concluded the settlement agreement was "fair and provide[d] a realistic plan for [the Township] to meet its affordable housing obligation."

Contrary to Mercer's contention, the judge repeated her reasoning supporting the taking of MMHP for a public purpose in subsequent rulings in this action; she did not just rely on her prior determination. As stated, her ruling is sound and supported by long-standing precedent.

A-5655-17T3

We are unpersuaded by Mercer's assertion that the condemnation of MMHP will not achieve any greater number of affordable units than are already in existence. Mercer argues that since a mobile home is inherently affordable, the acquisition of MMHP cannot increase the number of affordable units. It is true the Township does not seek to increase the number of pad sites at MMHP. Rather, the acquisition of MMHP and the subsequent deed restriction on the pads will preserve the affordable nature of those pads for at least fifty years. Without the deed restrictions and requisite income guidelines preserving the affordability of the pad sites, there is nothing to prevent Mercer from selling or redeveloping its property subject, of course, to the applicable zoning ordinance.

In addition, municipalities are authorized under the powers of eminent domain to rehabilitate or convert existing structures for use as affordable housing. The FHA states:

> [A] municipality may purchase, lease or acquire by gift or through <u>the exercise of eminent domain</u>, real property and any estate or interest therein, which the municipal governing body determines necessary or useful for the construction or <u>rehabilitation of low and moderate income housing or conversion</u>[6] <u>to low and moderate income housing</u>.

---

[6] The FHA defines conversion as "the conversion of existing . . . residential structures for low and moderate income housing purposes where a substantial percentage of the housing units are provided for a reasonable income range of low and moderate income households." N.J.S.A. 52:27D-304(g).

> The municipality may provide for the acquisition, construction and maintenance of buildings, structures or other improvements necessary or useful for the provision of low and moderate income housing, and may provide for the reconstruction, conversion or rehabilitation of those improvements in such manner as may be necessary or useful for those purposes.
>
> [N.J.S.A. 52:27D-325 (emphasis added)].

The Township has committed to rehabilitate MMHP through the much-needed infrastructure improvements as well as the conversion to low and moderate-income housing. The public purpose required under the FHA is satisfied under the Township's plan.

Mercer also disputes the Township engaged in bona fide negotiations concerning the taking of MMHP. We disagree. Mercer was apprised as early as 2015 – when it was the contract purchaser – of the Township's plans for MMHP. The record reflects the Township's numerous attempts over the next several years to resolve the acquisition of MMHP. Mercer did not respond to requests by the Township and the appraiser to provide certain information, nor did Mercer attend scheduled meetings. Mercer did not communicate with the Township after receipt of the appraisal.

The Township passed an ordinance in September 2017 authorizing the funding to acquire MMHP and the two additional lots; a Resolution was passed

in October 2017, approving the appraisal and authorizing an offer to Mercer for the property. It was only after those municipal actions that counsel filed a notice of appearance on behalf of Mercer as an interested party in the affordable housing litigation. That same day, October 31, 2017, Mercer's counsel advised the court of its plan to engage with the Township to reach a plan to satisfy the municipality's required affordable housing credits without exercising eminent domain. Counsel also requested a continuance of the compliance hearing and additional time to negotiate with the Township.

After the parties' meeting on November 1, 2017, the Township made a written offer on November 3, to Mercer of $7,080,000 for all three lots. The letter reiterated it was the "Township's preference to acquire the property by mutually acceptable agreement through voluntary negotiations" with Mercer, but, if the negotiations were unsuccessful, "the Township [was] authorized by law to acquire the property by the use of eminent domain."

Over the next three months, the parties met several times, including a conference with the special master. Although the Township requested certain documentation as well as the appraisal procured by Mercer, the materials were not provided. On February 6, 2018, the Township amended its November 2017 offer, tendering $5,700,000 for the acquisition of only MMHP. The Township

advised the court if there was no counteroffer, it intended to file a condemnation action within several days. A counteroffer was received eleven days later, but no appraisal was ever provided and the Township deemed the action a denial of its offer and the end of good faith negotiations.

Before filing a complaint seeking authority to take property by eminent domain, a plaintiff must engage in "bona fide negotiations with the prospective condemnee." N.J.S.A. 20:3-6. The taking agency must conduct an appraisal of the property, allowing the owner the opportunity to be present at the inspection. Ibid. It must subsequently send an offer in writing, which includes "the property and interest therein to be acquired, the compensation offered to be paid and a reasonable disclosure of the manner in which the amount of [the condemnor's] offered compensation has been calculated." Ibid. If a condemnor fails to engage in bona fide negotiations, the complaint must be dismissed. Morris Cty. v. 8 Court St., Ltd., 223 N.J. Super. 35, 37 (App. Div. 1988). All of these requirements were met. The record contains ample evidence supporting the judge's determination that the Township satisfied its bona fide negotiations requirement.

We briefly address Mercer's assertion that capital improvements should not be deducted from the estimated fair compensation. A trier of fact will be

charged with determining the "value that would be assigned to the acquired property by knowledgeable parties freely negotiating for its sale under normal market conditions based on all surrounding circumstances at the time of the taking." State ex rel. Com'r of Transp. v. 200 Route 17, LLC, 421 N.J. Super. 168, 172-73 (App. Div. 2011). If necessary, the commissioners and a jury shall consider Mercer's argument regarding the capital improvement. As the judge noted, the Township has presented appraisals with and without the deduction.

Mercer has not demonstrated the taking of MMHP is in bad faith, or that the Township abused its eminent domain authority or acted arbitrarily or capriciously. We "will not upset a municipality's decision to use its eminent domain power 'in the absence of an affirmative showing of fraud, bad faith or manifest abuse.'" Twp. of W. Orange v. 769 Assocs. LLC, 172 N.J. 564, 571 (2002) (quoting City of Trenton v. Lenzner, 16 N.J. 465, 473 (1954)).

Affirmed. The stay is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION